Judge Greek :
This case presents the question, whether an administrator, de bonis non, can maintain an action of debt, or scire *288 facias, upon a judgment obtained by an executor for a debt due by the testator.
In England, from time immemorial, an executor was, and still is, entitled to the surplus of the estate, after paying the debts and legacies of the testator; and this has been ° ° the law of Virginia, until the 1st of January, 1787, and still continues to be the law here, unless the act of 1785, ch. 61, (which took effect on that day,) abolished it by the provision, that if any person die intestate as to his personal estate, or any part of it, the same shall be distributed to his next of kin, as the act directs. Judge Peneeetoií seems to have inclined to the opinion, that such was the effect of the law, in Shelton v. Shelton, 1 Wash. 64. But that point was not then adjudged, and has not since occurred, as far as I am informed in any case in this Court.
Upon this question, I have doubts; and as it is not necessary to decide it in this case, I give no opinion upon it. This right of the executor resulted, not from any supposed intention of the testator to give him such surplus as a legacy, but from the fact that the legal title is in him, and at the common law there was no one entitled to claim distribution, even if it appeared from the terms of the will, that the testator intended the executor should not take the surplus. The next of kin, even wife and children, had no claim, as such, more than any stranger, to such surplus, either in the hands of an executor or administrator, until the statute of the 22 and 23 Car. 2, which created the fights, and even the name, of distributees. Since that statute, and in modern times, Courts of Equity have held, that an executor is a trustee for the distributees as to such surplus, when it appears that the testator intended that the executor should not have it. The first case to this effect, was that of Foster v. Mount, 1 Vern. 47, (1687;) and it was never asserted, that in such case, if there were no distributees, the Crown was entitled, until 1783, in Middleton v. Spicer, 1 Bro. Ch. Rep. 201. Asa further proof that the right of an executor to the surplus, rested upon this fomr *289 dalion only, the moment his legal title ceased, this right to the surplus ceased also. That legal title ceased with his life, so that he could not dispose of his testator’s goods, even in his possession, by his will; and if he appoint an executor, he shall be the immediate executor of the first testator, and shall take the goods and chattels unadministered by the first executor, and be entitled to the surplus of what may. come to his hands to be administered. 11 Vin. Abr. 421, pl. 6. And if there be two executors, and one dies, the survivor is entitled to all the goods unadministered; and if any such be in the hands of the executor of the deceased executor, the survivor may recover them by suit. 11 Vin. Abr. 377, pl. 5. So, if the executor die intestate, all the goods and chattels unadministered by him go to the administrator de bonis non; and he, before the statute of distributions, was entitled without account, to all the surplus of the assets which came to his hands, after debts and legacies; but now, is bound to distribute such surplus to the next of kin of the testator. By virtue of the statute of distributions, administration is grantable of right to him who has the greatest interest in the estate. Thus, if a feme be executrix and legatee, and die, administration de bonis non should be granted to the husband as her next of kin, and entitled as her distributee. If she be not legatee, and others are, it ought to be granted to them; and if there be no legacies, then to the next of kin to the testator. 11 Vin. Abr. Executors and Administrators, M. 5, pl. 6, and 2 P. Wms. 161; Ibid. 340, Somner v. Hooke.
In all these eases, the executor of the executor, the surviving executor, and the administrator de bonis non, are only entitled to the goods and chattels of the first testator, nnadministered by the first executor; and nothing is unadministered but that, the property of which remains unchanged. When the property has been changed, so that it has become the property of the executor in his own *290 right, as goods sold, and the money applied by the executor to the purchase of other property, they are thereby administered; and if the property so" administered was not applied by the executor in the payment of debts and legac;es it was a devastavit and a tort, which died with the ,. person, and there was no remedy at law tor a creditor, or the administrator de bonis non, against the representative of the executor, until one was given to the former by the statute of 4 and 5 W. & M. But that statute gave no remedy to the administrator de bonis non. Originally, administrators were mere bailiffs of the ordinary, accountable to them only. The ordinary applied the assets of intestates, according to his own pleasure, to pious uses. He was not bound to make any distribution; nor could any creditor sue him or the administrator for a debt. The statute of Westm. 2, Cap. 19, authorised creditors to sue the ordinary; and the same statute, Cap. 45, authorised a scire facias against him. But neither of these statutes authorised the ordinary or administrator to sue for the debts due to the intestate; and at common law, neither could sue for such debts. It was not until the 31 Ed. 3, Cap. 11, near one hundred years after the statute of Westminster 2, that any authority was given to an administrator, to sue for debts. 11 Vin. Mr. 52. That statute made various alterations as to the rights and duties of administrators. It compelled the ordinary to grant administration to the next friends of the intestate; and the appointment, once duly made, could not be revoked, as administrations might before be revoked, at the pleasure of the ordinary. The administrator, so appointed, might sue as an executor, be sued as executor, and was accountable as executors are. This last provision gave the administrator the same right to the surplus as an executor had; and he was not bound to make distribution, as the ordinary had not been before this statute. This was the construction given by the Courts to the statute; and in the 12 James 1, and even after, until the statute of distributions, prohibitions issued to prevent *291 the ordinaries from compelling any distribution by an administrator. 11 Vin. Abr. 52 and 182, Z. b. pl. 1, 2.
I have thought it necessary to premise so much, as to the state of the law in relation to executors and administrators, before the statute of 17 Charles 2, giving a scire facias to an administrator de bonis non, on a judgment in favor of an executor. This statute passed five years before the statute of distributions. Considerations arising out of the then state of the law, will enable us to ascertain the reasons, upon which the judgments and opinions in the English Courts, as to the point under consideration, were founded.
It is said, that the scire facias in personal actions was given by the- statute of Westm. 2, Cap. 45, and did not exist at common law. Buc. Abr. Scire Facias. C. 1. Lord Holt, in Withers v. Harris, 2 Salk. 600, doubted whether this was true as a general proposition, but submitted to the weight of authority. I think any one who will examine the statute at large, will agree with Lord Holt. It will be found that the statute gives only a scire facias after the year and the day, instead of a new action, which was necessary at the common law, and a scire facias against the ordinary; and these are the only cases expressly provided for. No scire facias is given to an executor, and of course, not to an administrator; for an administrator could not then sue at all, in right of his intestate. If the great variety of scire facias’s, in use in England, sprang out of this statute, it must have been upon a most uncommonly liberal construction. It is, however, immaterial from what source this process was derived, whether from the common law or statute. It came to us upon the settlement of the colony, and has been preserved by the exception in our act repealing the British statutes.
The first reported case upon the question under consideration, is that of Leavett v. Lewknor, which began 26 H. 8, and is stated in 11 Vin. Abr. 421, pl. 5. The Court, consisting of Jenour and Fitzherbert, were divided in opinion; the former being of opinion, that when execu *292 tor recovers and dies intestate, and the ordinary commits the administration of his goods, and of the first testator, to I. S., he shall have execution as administrator of the testator, and not as administrator of the executor; because the first testator is dead intestate. The latter thought that he should have execution as administrator of the executor; for otherwise he shall lose the advantage of the recovery as executor. Neither seems to have doubted that the judgment was valid, and might be enforced in the one way or the other. The same case came on again in the 28 H. 8, and is reported by Moore, Bendlor and Anderson, when it was determined by the whole Court, that a scire facias would not lie for the administrator of the executor (for the scire facias was sued out by administrator of the executor:) that the judgment was void; and that the administrator de bonis non might have anew action for the cause of action, upon which the judgment was founded; and as the case is reported in Moore and Bendlor, it is said, “But if administration of both estates had been committed to the same person, quaere, if he might not have had the scire facias.” I confess I do not understand this quaere; for that seems to have been the precise case at bar, if, as is stated by Bendlor, and in 1 Co. 96, this was the same case as that of the 26 H. 8, pl. 7. In the report of this case, the 26 H. 8, pl. 7; 2 R. 3, pl. 8, and 10 Ed. 4, pl. 1, are cited. The second of these cases was to this effect. A statute staple was acknowledged to A. who died leaving B. his executor, who died intestate, and C. was administrator both of A. and B. The statute had not been enrolled, and C. applied to have it enrolled, and to have execution without a scire facias, exhibiting his letters of administration on both estates; and the execution was awarded without a scire facias upon the construction of the statute of Westm. 2. But it is not said, whether the execution was in C’s character as administrator of A. or administrator of B. But I should think, of A.; for B. had done nothing to change the property. The case of Ed. 4, pl. 1, was this. A person, seised jure ecclesice, sowed the land and died *293 B. his executor also died intestate, and C. was administrator of B. and afterwards another cut and took away the crop. C. as administrator of B. sued for this; and it was decided that he could not maintain the action. These cases do not support the iudgment in Leavett v. Lcwknor: and so far as I am informed, that was the first decision upon this point.
This decision was followed by Yate v. Gouge, reported in Croke James, and several other books; a reference to which is to be found in the margin of Brudenell's Case, 5 Co. 9, and was also affirmed in many other cases, and was never after questioned or departed from. It was upwards of 120 years, before a remedy was provided by the statute of 17 Car. 2, Cap. 9, which gave a scire facias in such case to the administrator de bonis non; and even after that statute was passed, the doctrine was applied to the case of a judgment by default, in favor of an executor; in which case, a scire facias was not allowed to an administrator de bonis non; the statute only giving him a scire facias on a judgment after verdict. 11 Vin. Abr 111, pl. 3. The seeming contradiction of Leavett v. Lewknor in Den v. Bailey, 2 Lev. 101, (36 Car. 2,) as reported by Viner 108, pl. 5, vanishes upon inspecting the report in Levinz; for the whole Court there assented to the doctrine of Leavett v. Lewknor; and the statement in 11 Vin. Abr. 420, pl. 3, from Sid. 79, that the administrator of an executor shall have the goods of the testator, is also a mistake. The original report shews only, that if the executor is residuary legatee, his administrator is entitled to the administration of the estate of the testator, unadministered by the executor.
Let us enquire into the reasons which probably led to this decision; for they are not stated at large in the report. Before the statute of Edward 3, an administrator could not prosecute a suit for a debt due to the intestate. If an executor, therefore, had obtained a judgment for a debt due to his testator, and died intestate, the administrator de bonis *294 non could not claim either the debt or judgment in any form ancl it js probable., that after that statute, the administrator of the executor proceeded to enforce the judgment, as belonging to his intestate, without objection. No objection could be made by any but the debtor, and an objection frorn him would not, probably, be attended to. The original contract was merged in the judgment; and it might well be held, that the judgment changed the property of the debt, and vested it in the executor, although it . was not assets in his hands for the payment of debts, until the money was received. This idea is countenanced by the law upon an analogous subject. A husband is only entitled to his wife’s chases in action, by .virtue of his marital right, when they are reduced into his possession, or the property otherwise changed. Yet if he, jointly with his wife, sued upon a bond given to her before coverture, and they had judgment, and the wife died; he might sue execution in his own name, and if he died, the judgment would go .to his executor or administrator as his property. For although this judgment does not alter the nature, yet it changes the,property of the debt. 4 Vin. Abr. “Baron & Feme,” H. A. pl. 7. This practice might have continued long after the statute of Edward 3, and until the increasing commerce and credit of the country, might induce a change in favor of creditors, who could, in the then state of the law, only get satisfaction for their debts out of the' assets in the hands of the administrator de bonis non. It was their interest, that as much as possible should come to his hands. A knowledge of this practice might have induced Fitzherbert to entertain the opinion which he advanced in 26 H. 8, folio 7, in favor of the right of the administrator of the executor.
The statute of Edward 3, by allowing the administrator to recover the debts due to the intestate, added to his former liability to pay the debts of the testator, gave great weight to his claim to a debt under such circumstances. If the' representative of the executor; and the ad *295 ministrator de bonis non, had both been liable to the claims of creditors, or neither had been liable, (their interest being the same in respect to the surplus, and neither being bound to distribution,) there would have been no motive for favoring either; and the rule of law applicable to husband and wife, that a judgment changed the property oí the debt, would probably have prevailed, in favor of the administrator of the executor. But the interests of creditors being thrown into the scale of the administrator de bonis non, it preponderated. Yet as late as 34 Eliz. the question arose whether the executors of an administrator, who had obtained a judgment for a debt of his intestate (which, in effect, was the same, as to this point, as if he had been an executor, and the plaintiff his administrator) could enforce it; and it was decided that they could not; and the reason assigned was, that “ none should have execution of the judgment, but he who shall be subject to the payment of the debts of the first intestate. ” Brudenell’s Case, 5 Co. 9. This reasoning in favor of the claim of the administrator ole bonis non, acquired great additional weight, when, by the statute of distributions, the claims of distributees were added to those of creditors. For distributees could not claim any surplus of what had been administered by the executor, but were entitled to any surplus in the hands of the administrator. The ancient right of the representative of an executor, to claim a judgment obtained by him, as his, in consequence of its changing the property, gave way to the policy of the law in favor of creditors, but did not yield when that policy could not have effect. Thus, an administrator recovered a judgment for goods taken and carried away in the life of the intestate, and died. Yet his administrator was entitled to have execution of the judgment, and not the administrator de bonis non of the first intestate. Nor was the latter entitled to a new action for the same cause. Moore’s Rep, 680
*296 There are many cases to shew that an administrator de bonis non, was entitled to the proceeds of a judgment in favor of the executor, or preceding administrator, if it could, be executed without a scire facias, or a new action upon it. Thus, if an executor has extent on a statute to the testator, and has possession by a liberate, and dies intestate, the administrator de bonis non shall have the benefit of it, that is, shall have the term. 11 Vin. Abr. 108, pl. 2, Cleve v. Vere. So, executor recovers and sues execution by elegit, and dies intestate before the debt is levied; the administrator de bonis non, shall take advantage of this execution. Secus, if it had not been sued at the time of the death of the executor. Sid. 29; Harrison v. Bowden, (12 Car. 2.) So, executor has judgment by default, and dies, and goods are seized in his life-time under execution, but not sold. Sheriff may sell, and the administrator de bonis non shall have the money. 6 Mod. 230; 1 Salk. 223, Clerk v. Withers, (3 Anne.) This was after the statute of 17 Car. 2, but did not fall within it; since it was a judgment by default, and not after verdict.
These eases proceeded on the ground, that neither the judgment nor the execution, even if executed, changed the property of the debt, if the proceeds of the execution could be identified. The general rule is, that all the goods and chattels, not administered, or what is equivalent, the property of which was not changed and vested in the executor, goes to the administrator de bonis non. Thus, all goods remaining in specie, and even money received by the executor for a debt due to the testator, if kept separate, so as to be identified, went to him. Bac. Abr. Executors and Administrators, B.2; 11 Vin. Abr. M. 6. But when the property was changed, it remained to the representatives of the executor; as, if he had sold property, or taken a note or bond for a debt due to the testator; or made a new contract in relation to his testator’s property, as, renting it and taking a covenant for the rent to himself. In the cases above cited, the term levied under the extent, and in *297 possession of the executor, the property levied under the elegit, and the money levied under the fi. fa. were still considered as the property of the testator unadministered. The judgments, therefore, could not be the property of the executor.
After deciding that a judgment was not an administration by the executor, I should, I confess, not have thought it unreasonable, to allow the administrator de bonis non, to proceed upon the judgment by scire facias, or action of debt. But the English Courts, upon great and repeated deliberation, and for upwards of an hundred years, denied it upon the purely technical ground, that there was no privity between the executor who obtained the judgment, and the administrator de bonis non; the latter claiming, not under, hut paramount to, the executor. This was probably founded upon the terms of the administrator’s commission, which authorises him to administer all and singular the goods and chattels, rights and credits, which were of the testator, at the time of his death, unadministered bj? the executor; and the idea was, that the debt was of the credits of the testator, at the time of his death, but not the judgment, although the latter was a part of his estate; and that therefore the administrator might sue de novo for the debt, hut not upon the judgment This seems to me to be a refinement, inconvenient in its consequences. it might possibly deprive those interested in the estate, of file debt, by loss of evidence; and, on the other hand, deprived the debtor of the benefit of the plea of res judicata, which he has in all other cases, and might subject him to a larger recovery, from the loss of his evidence.
■It is said, that although the Courts in England have denied a privity in this case, they have admitted it in other eases, liable to the same objection of the want of privity; and the cases of an administrator durante minoritate, and of executors summoned ami severed, have been cited. As to the last case, of executors summoned and severed, it was decided in II R. it, that when three executors brought *298 action, two were summoned and severed, and the third recovered and died, the other two shall have execution. 11 Vin. Abr. 378, pl. 2. But it was probably the practice at this time, to retain the names of the executors who wore severe(^j as parties, upon the rule that all executors, whether acting or qualified or not, should be named as plaintiffs; and their severance only deprived them of any power over the suit, except to release the debt. See 11 Vin. Abr. 321, pl. 13; 5 Eliz. This was urged in Price v. Packhurst, Cro. Car. 420. But the Court held that judgment ought to be given only in the names of those who were not summoned and severed; and since that, it has been held, that when two executors sue, and one is summoned and severed, and the other proceeds to final judgment, and dies; the one severed, cannot take out execution. 6 Bac. 407, let. H.; and I do not find that one severed can bring debt or scire facias upon the judgment.
As to the cases of administrators durante minoritate, the administrator is a mere bailiff for the executor, in loco executoris and adproficuum executoris, as it is said. In Brownlow, 59, it is said, that the better opinion of the Court was, that an executor could not have a scire facias upon a judgment in favor of an administrator durante minoritate; but afterwards, in 2 Brownlow, 83, that he may, in such case, have a special scire facias; and at a subsequent time, (9 James) it is said, that executor, after he comes of age, may sue execution upon such judgment. Cro. Car. 227. And in the same year it was said, that an executor, after he comes of age, may have a judgment obtained by an executor durante minoritate; for he is in privity, and in by the testator, and not like an administrator, who is in by the ordinary, after the death of the executor. Owen, 134; 2 Brown, 144; Kemp & James v. Lawrence. This last remark only applies to the last case, where both the executor durante minoritate, and the general executor, were in by the will, and one appointed to succeed the other by the will. And this case is like that *299 of an executor of an executor, both of whom are in by the will of the testator; the will implying an authority to every executor to continue the executorship by his appointment, This is the only privity which the executor of an executor has with the first testator. lie claims the judgment in fa- , ■’ n vor of the first executor, not as his executor, but exclusively as executor of the first testator; and these two characters are so independent of each other, that he may, at common law, renounce the one, and accept the other; though this was, in one case, denied. The other cases above cited, are not liable to this remark, but to the other, that the administrator durante minoritate is the bailiff of the executor.
There is, however, one case, in which a scire facias upon a judgment has been allowed, in which there seems to me to he no more' privity, than between the executor and administrator, in the case under consideration. A scire facias is allowed against an administrator de bonis non, to revive a judgment obtained against an executor or administrator. Cro. Car. 167. The Court indeed says, that the cases are distinguishable, but I do not see in what, so far as the question of privity is concerned. This is among the last cases reported on this point; the statute of 17 Car. 2, having soon after, in a great measure, put an end to the question. This may, I think, be considered as a departure from the principle of the former cases. And upon the whole, I think that the administrator de bonis non is, without doubt, entitled to the subject for which judgment is given, in such case: that there was not originally, any reason, for denying him a scire facias or action of debt upon such judgment: that there is, in effect, the same privity, whether the right devolves upon the administrator de bonis non, by operation of law, or upon the executor of an executor, by the act of the first executor: that there is sufficient privity to justify his claiming property in the judgment, in like manner as he would have property in the increase of the testator’s live stock remaining in spe *300 cie, although the-parent stock had perished: that as a judgment against the executor would bind the administrator de bonis non, he ought to have the advantage of a judgment in favor of the executor; and that an action of debt or scire facias may be maintained in such cases.
I have not considered whether our statute laws have any effect upon this question, since I came to this conclusion, upon the principles of the common law. I should probably have doubted more upon this question, if I had not been informed that it has been decided in the same way, by the Chief Justice of the United States, upon great consideration, in the case of Backhouse’s administrator v. Tabb.
There is another point in this case. The declaration avers, that “John Ansell, executor of Woodhouse, recovered the judgment;” but does not state that the recovery was fora debt due to Woodhouse. The question is, whether the declaration be sufficient to justify a judgment for the plaintiff? It seems to be a general rule, that the plaintiff’s declaration must state enough to shew, if true and not avoided by the plea, that the defendant is necessarily liable to the plaintiff’s demand. Thus, in detinue, trespass and trover, it is not sufficient to state that the plaintiff bailed the property to the defendant, or that the property was in the possession of the plaintiff; although, from these facts, it might be inferred, if nothing to the contrary appeared, that the property of the subject of the suit was in the plaintiff. He must alledge that the property was in him. Kent v. Armistead, 4 Munf. 72; Saund. 379, (n.) 13. So, it is not sufficient for an assignee to declare that the debt was not paid by the defendant to him, without also alledging that it was not paid to the assignor; although when it is shewn that a debt was contracted, it might be presumed that it was still due, until shewn to be paid. Green v. Dulany, 2 Munf. 518. The Court can presume nothing* unless after verdict. In this case, there is no verdict. The judgment as described in the declaration, may have been *301 upon the contract with the executor, in relation to the es-tale of the testator, as for goods of the testator sold by the executor to the defendants; in which case, all the cases agree that the representative of the executor, and not the administrator de bonis non, is entitled to enforce' the judgment; and if that were in fact the case, the defendants could not avail themselves of a judgment, in this case, in favor of the administrator de bonis non, to bar a suit upon the judgment, by the representative of the executor. But it is said, that a record of a judgment upon a bond given to the executor, would not maintain the issue on the part of the plaintiff; since it would not be a judgment in favor of John Ansell, “ executor of fPoodhouse,” but of John Ansell, individually; and that the addition of “executor of Woodhouse,” would be mere surplusage. There is great weight in this observation. But upon the whole, I do not think it a sufficient answer to the objection to the declaration; for, if the description of executor be surplusage, in the record of the judgment sued on, it is surplusage in this declaration, unless the judgment were alledged to be for a debt due to the testator. It proceeds upon the principle, that a judgment on the plea of no such record, ought to have the same effect as the verdict of a jury; after which, it is presumed that the plaintiff proved enough to justify the verdict, and such a verdict cures when a fact material to the plaintiff’s case is imperfectly slated, but not when it is totally omitted. It seems to me, that the declaration, after a judgment upon the issue of no such record, should he considered as if there had been a general demurrer to it; and that this declaration would not be good, upon such a demurrer. It is said in Moore, 680, (before cited) that there is one case, in which an executor can only recover in his character of executor, and not in his individual character; and that his administrator may pursue the judgment. The case of an action for the goods of the testator taken and carried away in his life-time. This was probably founded upon the idea, that the damages recovered in *302 such an action, are not of the goods, chattels, rights or ere-¿¡¡-g 0f the testator, at the time of his death; and so, do n°t come within the terms of the commission of the administrator de bonis nbn. I should hardly think this proposition maintainable. It seems to be the fruits of a' right of the testator, at the time of his death, prosecuted to judgment by his executor. I do not find this proposition either affirmed or denied, in any book to which I have access. The case of Turner v. Davis, 2 Saund. 137, upon examining the pleadings, appears to be one, in which an administrator recovered a judgment for the testator’s goods, taken and carried away, after the intestate’s death, and before the administration; which was the same, in effect, as if taken after the administration. The administration was after-wards annulled, upon appeal, upon the ground that it was improperly granted; the consequence of which was, that his authority was avoided ab initio, and the new administration was granted, of all the goods, chattels, rights and credits; of the testator, at the time of his death, and not of the goods, &c. unadministered by the former administrator. So, that all the acts of the first administrator were void, and if he had sold the goods of the intestate, the other administrator could have recovered them against the purchaser. 2 Fonb. 384, (n.) (q.)
Upon the whole, I think the judgment should be reversed.
Judge Coaltek:
The first question which seems to present itself, is, whether the declaration in this case is fatally defective? If so, although it might be expedient, it would not be necessary, to decide the other and more difficult question, whether the administrator de bonis non, with the will annexed, can maintain this suit?
Formerly the practice was, to set out the whole record in the declaration; but that is not now necessary; and this *303 declaration is, in this respect, according to the general forms now in use. 1 Saund. 92, (n.) 2.
But it is said, that it does not appear, whether the judgmerit, now sued upon, was obtained by John Jlnsell, as executor of Woodhouse, for a debt due to his testator, or on account of goods of his testator, sold to the appellants, and the bond taken to him by the description of executor; or whether it is on a simple contract for goods of the testator, sold by him .as executor; in either of which cases, the suit would be in Ms own right, though on a transaction relating to the estate.
The declaration states, that John Ansell, executor of Thomas Woodhouse, recovered the judgment. Thisavers, then, that a judgment was obtained by the executor. There is a plea of mil tiel record; to which the Court respond, that there is such record of recovery as in the declaration supposed.
But it is said, that the Court could so have adjudged, even although it might have appeared that the judgment was not recovered by the executor as such, but by John Jlnsell, in liis individual right, the word “executor” being affixed to his name, merely to shew that it was a transaction in relation to the estate. Suppose the declaration in that suit had been, by John Jlnsell, otherwise called John Jlnsell, executor of'Thomas Woodhouse, complaining that the defendants executed their bond to him, by the name of John Jlnsell, executor, &e. Would this have been the record of a judgment recovered by John Jlnsell, executor of Woodhousel Surely not; and yet this would he the same as a declaration without the alias dictum. And had the Court adjudged that it. was such record as in the declaration supposed, and an exception had been taken, spreading the record of that judgment on the record in this case, we must have reversed the judgment for that error.
It is said, no. We ought to reverse even in that case on the declaration; and now though there is no exception, we ought so to do. Suppose, however, that there had been *304 such exception, and the record produced, shewed a judgment recovered for a debt due to the testator; still, must we reverse for this defect in the declaration ? I think not; and that now we must take it, that the judgment appeared to be of this latter description. I approve of what the , 1 1 counsel said in 1 Wilson, 318, which turned on an objection to the sufficiency of a declaration on a record of an inferior Court, “ that our learned Judges in these late and happier days, have rather been asiuti to do justice, than to find out slips in pleadings.”
It is true that a cause of action must be set out in the declaration, either perfectly or imperfectly. Even if this would have been more perfectly set out by the word “ as” before the word “ executor,” or by a distinct averment that it was for a-debt due to the testator; and even admitting (which I do not) that this declaration would have been bad on special demurrer; yet here has been a trial in which, if the case was as is alledged, the party had his remedy; and though this is not a verdict within the words of the statute of Jeofails, it was a trial and ascertainment of the fact on the general issue, in the only way it could be tried, and is much stronger than a judgment by nil dicit or non. sum informaius, which are noticed by the act. It has been urged that an executor as such, and only as such, may sue under the statute, for goods of the testator, carried away in his life-time; and that this judgment will go to his representatives, if he-dies before execution. To this I answer, first, this is not that case. Secondly, if it was, I think the money recovered would be assets, and that the judgment must go to him, who will have to pay the debts. So too, if this had been a recovery, under the statute, in debt, for rent in arrear in the life-time of the testator. .
There is a case in Cowper 18, Rowland v. Veal and others, which, it appears to me, may bear on this case. The suit was for assault and false imprisonment; and the defendants justified under an execution from an inferior *305 Court, wherein they say, Andrew Veal levied his certain plaint against the plaintiff, in a plea of trespass on the case, for a cause of action personal, arising within the jurisdiction of the Court, and “ thereupon such proceedings were had,” &óe. To this, there was a special demurrer, and amongst other things it was objected, that the plea had only set out that the plaintiff below had levied his plaint, &c. and did not set forth that the present plaintiff became indebted within the jurisdiction of the Court. As to this, Lord Mansfield says; “formerly the Courts of Westminster Hall, were much more strict in regard to the setting out proceedings in inferior jurisdictions; and nothing was to be presumed iu favor of their regularity; nor was it allowed to set them out with a taliter processum est. But these objections have of late years been over-ruled, in order to come to the real merits.” lie cites a eaáe upon a plea of justification to an action of trespass and false imprisonment, setting forth generally, “ that a plaint was entered in plácito transgressionis,” in the Court of Warwick, with a taliter processum. Exception was taken that it was not set forth what kind of trespass i£ was; but the Court held it was well enough. As to the latter part of this objection, that it is not stated in the plea, “ that the plaintiff became indebted within the jurisdiction,” the same liberality is to hold; for if the cause of action did not so arise, the defendant should have availed himself of it in the Court below.
It is expressly allcdged, that the plaint was for a cause of action, arising within the jurisdiction; and therefore, a sufficient averment that the defendant became indebted there. Suppose one,, not a resident of Richmond, contracts a debt within the city, and is sued there; and it is staled in a declaration or defence under that judgment, that the cause of action arose within the jurisdiction of the Corporation Court. This would he true, though the party might not be suable there. Yet, from this case, I understand that the declaration or defence would he good, though the jurisdiction was not more explicitly averred. *306 Here he could have availed himself of the objection, had ex¡sted on the plea of mil tiel record.
The declaration in the case before us, though it might have been more full and explicit, seems to me to contain the averment, with sufficient certainty, that the judgment was recovered as executor, and that a record of a judgment by him in his individual right, although he may have been named executor in that record, as above stated, would not be such a judgment as the declaration set out, and that therefore the declaration is sufficient'.
The next question is one of novelty at least, if not of difficulty.
I have not been able fully to explore the ancient doctrine, on the question, whether, a scire facias could he sued in this case, under the statute of Westm. 2, or not, and to which statute we are now indebted for that writ. Nor do I feel much regret that I have not those lights more fully before me. As far as I have been able to view them I think they are, as to the principles on which they go, in many respects, so contradictory of the soundest principles of law in analogous cases, that I doubt whether they would now be considered law in England; and in establishing a mere matter of practice, not in the smallest degree affecting rights, I should be very sorry to establish one not called for by any sound principle of law or common sense; but which being, as it appears to me, contrary to both, would require a similar statute to that of 17 Car. 2, to remedy the evil I would thus produce. I would be the less disposed too, to be governed by the British decisions on this subject, even if I could reconcile them to established law in analogous cases in that country, because, I think, from the first existence of this nation, the whole system of our laws, in relation to the rights and duties of executors and administrators, has so materially varied them from those in England, at and before the time when the foundation of the doctrines contended for, were laid; that I think the course of legislation here, on the subject, is entitled to considerable weight.
*307 Again. This is perhaps the first time that this question iias been presented to this Court; or perhaps to any other Court in this State, except the Federal Court, in the case that has been cited. This must be because the practice has been general, for an administrator de, bonis non, with the 4 , will annexed, either to sue a scire Jacias oil the judgment obtained by the executor, or to bring debt thereon, as in this case. I cannot think that the practice has been to consider the judgment void, and begin de novo. I have never met with a case, either in this country or in England, in which a new suit was brought and maintained on the original cause of action, by the administrator de bonis non, after the executor had recovered judgment for the same cause of action; and although some of the cases seem to imply that this was the remedy, I will presently give a few of the reasons, why I think that could not be the case. If this, then, was never resorted to as the remedy in this eountry, and if either both or one of the others has been the practice here, and that under a system of laws varying from those in England, and, by their spirit, supporting such a practice, we ought perhaps to make some estimate of the probable mischief which would result from a change in that practice, before we did change it; even if the new practice might appear the more reasonable of the two. We must, moreover, recollect, that if the practice has been as I have supposed, it must have pervaded all the Courts of the Commonwealth, from the General Court down; and that it has been the course here, in mere matters of practice, not affecting rights or property, to vary from that in the Courts in England, as the situation of the country, and the general policy of our laws and institutions require; and this, though in matters oimeum and tuum we consider ourselves governed by the common law, where unaltered by statute. I should, therefore, not lightly depart from what I presume to have been the uniform practice on this subject.
The notion that the administrator de bonis non can bring his suit on the original cause of action, is not only open to *308 the objection, that the witnesses on either side, or other proofs may be lost, but to one, I think, of a more conclusive nature. How can the judgment recovered by the executor, be held void? It is recovered in right of the testator, by one having lawful right to recover it, and to conclude the estate by his acts. It then remains the property of the estate, though in a different form, the contract being merged in the judgment. It is no administration by the executor,- otherwise his estate would be liable therefor, though the debtor was insolvent. This is not preteuded.
But the administrator, for want of privity, comes in paramount, or prior, to the judgment. I can see no less privity between him and the executor, as to the estate, than between the executor of the executor, and his immediate testator. He is executor also, of the first testator-, and if a judgment, recovered by the executor, is a bar to any future suit for the same cause of action, the privity of both would .seem to be through the estate of the first testator, and equally established. How can it be otherwise than a bar ? The executor himself could not avoid it, after the year, and sue again on the original cause of action, and recover a greater sum, in case he could get further evidence; nor is it contended that his executor could do so. It has been expressly decided in Higgins’ Case, 6 Co. 45, that to a suit by an executor, on a bond to the testator, a plea that the testator recovered a judgment on the bond, in his life-time, without alledging an execution, but that it. still remained in full force, unreversed, was a bar; and this on the general ground, that no one shall be twice vexed for the same cause of action. How then, could the executor of the executor sue on the same bond ? If it would be a bar to such suit by either of these, how is it that the defendant might not avail himself of it equally as a bar to a suit by the administrator de bonis non ? I cannot perceive. Suppose the executor, through negligence in procuring his testimony, has failed in toto, and thus lost to the estate a just debt of $1000. Can this be drawn again into exami *309 nation in a Court of Law? 1 presume not. But if he proved $ 10, and got judgment, the administrator de bonis non may sue again, and recover $ 1000; though neither the executor, nor his executor, could go for more than the $ 10.
Again. There being no scire facias at common law, except on judgments in real actions, what was the remedy before the statute of Westm. 2, in personal actions, after the year? Bac. Abr. tit. Scire Facias, C.It was by action of debt or neto original on the judgment; and Lord Colee, in his reading on that statute, says, that it is in the affirmative, and therefore restraineth not the common law; but the party may waive the benefit of the scire facias, and take his original action of debt. 2 Inst. 471. lie also says, that one not a party to the record or judgment, as the heir, executor, or administrator, though they be privy, and though it be within the year, shall have no writ of execution; but are to have the scire facias, to enable them selves to the suit. But could they not also entitle themselves, before the statute, to the suit, by action on the judgment? I presume the executor of the executor could; otherwise, he would have no remedy to possess himself of this portion of the estate of the first testator, except by suing again on the original contract. If the executor of the executor could not do the latter, then there was no remedy, except to consider it an administration by the executor, and a part of his estate, and recoverable as such by his representative; but I understand all the authorities to deny this. Brudenell's Case, 5 Co. 9. But there is no hint, that this statute was intended to revive a remedy that had been lost, but merely to have execution of a subsisting judgment, in the name of one who, though privy, was no party to that judgment
If this be so as to the executor of the executor, had the administrator de bonis non no remedy at common law, except by vacating the judgment, and suing on the original cause of act'on? T cannot think this was his remedy.
*310 If a woman executrix marries, and husband and wife, in her right as executrix, recover judgment, and she* dies before execution, the husband shall not have scire facias; for that he, although he was privy to the judgment, shall not have the thing recovered, but it belongs to the succeeding executor or administrator. Bac. Abr. tit. Scire Facias, C. 6 ; 2 Saund, 72, L. This shews that privity is not the ground, but that the right to the thing gives the scire facias. So, also, in Brudenell’s Case, 5 Co. 9, an administrator recovered a judgment and died. His executor sued a scire facias; and it was held that he could not; “for none shall have execution of that judgment, but he who shall be subject to the payment of the debts of the first intestate, and that the said executor is not.” For this he cites 26 H. 8, 7; “and so,” he says, “it has also been adjudged in 28 H. 8, reported by Sergeant Benloes, that the administrator of an executor shall not have execution of a judgment given for the executor.”
In Shelley’s Case, 1 Co. 96, the counsel, in arguing, states this case in 28 H. 8, differently. He says, the case was, that an executor, having judgment to recover a debt due to the testator, and dying intestate before execution, and the ordinary having committed the administration of the testator to one, he shall not sue execution, because he deriveth his interest and represents the person of the testator, and so before the recovery. This, I understand, to be a true statement of that case; and upon this is founded all the other strange doctrines of want of privity, &c. and amongst them, that strangest of all, that the judgment by the executor must be considered as vacated, and that the administrator de bonis non may begin de novo.
In Slingsby v. Lambert and wife, Cro. Jac. 394, it is again stated, that if an executor brings an action, and recovers and dies intestate, the administrator of the first man may not sue execution by scire facias; for there is not any privity betwixt them, as 26 H. 8, 7; 5 Co. 9; 1 Co. Shelley’s Case.
*311 In Yare v. Gough, Cro. Jac. 4, the administrator recovered judgment, and died before execution. Administration de bonis non was granted, and the question was, whether he could sue scire facias ? Gaiody, Justice, held that he could; for the duty remaining is a debt to the in- - testate, and being recovered, continued with him in that nature, and being turned into a judgment, the second administrator shall have a special scire facias to execute it. But the other three Justices held that the action was determined, and he cannot have a scire facias, for default of privity, and therefore is put to begin again.
But, if an administrator durante minoritate recovers a judgment, and before execution the executor comes of age, he may have a special scire facias on the record, and have execution. 2 Brownl. 83; Keble, 750, pl. 42. To support this, 26 H. 8, 7, is cited in Brownlow. Now, I cannot see any privity here, (except through the estate,) which does not exist in the ease of the administrator de bonis non.
But the question, in all these cases, has been, whether a scire facias would lie under the statute; not whether an action of debt could be maintained, at common law, before and since the statute, by the administrator de bonis non. I think if this could not be done, then the reasonable doctrine laid down in all the cases, that he ivho is to pay the debts, ought to have the benefit of the judgment, is destroyed. Turn him round to the original cause of action, it may be barred by the statute, the evidence may be lost, and if neither of these be the case,- still he is barred by the former recovery, or the law on that subject is also subverted. I cannot think this latter was the remedy at common law.
But this is an action of debt on the judgment. But if it were a scire facias, I think the opinion of Gawdy, Justice, in Yare v. Gough, is good law; perhaps, even in England, but certainly here, under a system of laws which, from the commencement of our institutions, appear to me *312 to consider executors and administrators as trustees for creditors, legatees and next of kin, and to assimilate their offices more than they ever have been in England.
According to our earliest statutes, administrators, wheflier wJtla the will annexed or not, were to give security, and so, it seems to me, were executors as early as 1661; though the form of the bonds was not prescribed, until some time thereafter. 1 Hen. Stat. 416, 426; 2 Ibid. 90. Administrators, too, by our earliest laws, were bound to make distribution of the surplus, if there were next of kin; if not, it went to the Commonwealth; and even where they had administered, technically speaking, but had not accounted, the succeeding administrator could call them to account. So, also, could the administrator de bonis non, call the representatives of the executor to account; and these were debts of the first dignity. 2 Hen. Stat. 279; Ibid. 91, 92; 3 Ibid. 375. Even as to the surplus in the hands of the executor, not bequeathed, and whether it was to be distributed by him or not, before the act of 1785, I should have had serious doubts, upon the whole structure and policy of our laws, as we can now view them in the valuable compilation referred to, had not that question, as it regarded cases antecedent to the act of 1785 aforesaid, been settled, as it would seem to be, by this Court, in the case of Shelton v. Shelton, 1 Wash. 53, and again noticed in Fleming v. Bolling, 3 Call, 75. But I am still at liberty to say, that the whole history and structure of our laws, from the earliest days to the present, seem to assimilate, as much as possible, the offices and duties of executors and administrators. There are two executors, for instance, and one refuses to qualify and give bond. He is not named in any suit, so that a judgment by him who qualifies, will not survive to him who does •not; when he, after the death of the other, comes in and gives bond. He is no party to the record or judgment; nor is he the executor of the executor. What becomes of *313 this judgment ? Is he to begin de novo, or have his action of debt or scire facias on it? I think he may have either.
On these grounds, I think the judgment must be affirmed.
The President:
If it appeared by the record, that the judgment on which the action was brought by the appellee, was for a debt or demand duo to Ansell, the executor of Woodhouse, and not a debt or demand due to his testator, in his life-time, the case would be a different one. In the former case, it might be insisted, that the judgment being for a demand or debt due to Ansell, the executor, on his contract, as such, the judgment was a full administration, quoad hoc, and was not a part of the estate unadministered by Ansell, the executor; and of consequence, not belonging to the appellee as administrator de bonis non of Woodhouse, the testator. But it does not appear by the record; and it must be taken to be a judgment on a demand, which accrued to the testator in his life-time. The declaration alledges, that Ansell, executor of Woodhouse, recovered a judgment for $680 91 cts. with interest, against the defendants. In form and substance, it is in the nature of a judgment by an executor as such, for a debt or demand of his testator, and, in that character, is a part of the assets of the testator, unadministered by the executor, unless the judgment amounts to an administration of them. The plea is mil tiel record; and if the record produced on the trial of the issue on that plea, exhibited a judgment on a personal demand of the executor, it could not have been considered by the Court below, as corresponding with the one declared on, and the judgment below would have been for the appellants. The cases cited to shew the declaration defective, do not apply. Branton’s adm'r. v. Lipscombe, 2 Munf. 212, and several others in the same book, are cases, in which the alie *314 gations in the declaration were defective, in not negativing t¡ie payment of the demand to all the persons entitled to receive it, or omitting some one of the parties to the contract, who was entitled to demand it. No such defect exists in the declaration in this case. It covers the whole ground of the demand; and if, as is argued, the judgment relied on was in behalf of Ansell-, in any other character than as executor, and the term executor nothing more than a descriptio personae, it would have appeared by an inspection of the record in the Court below. My own impression was, and is, that the record of the judgment declared on, ought to be before this Court, that it might be seen. But it is said that there ought to have been a bill-of exceptions to bring it up, according to the case of Burk’s ex’r. v. Trigg’s ex’r. 2 Wash. 215. It not being so brought up, it must be taken to correspond with the judgment declared upon, for the reasons before stated.
That being the case, the only question is, whether such a judgment belongs to the appellee, as administrator de bonis non, or to the representative of Ansell, the executor, to be accounted for as a part of the estate of the testator Wood-house, administered by Ansell, his executor. Upon the principles of common justice and convenience, it would seem that the person entitled to the thing for which the judgment was rendered, is also entitled to the scire facias or action of debt, by which the object of the judgment is to be obtained. In Gough’s Case, Cro. Jac. it is said, that three Judges against one, decided against these principles; and from that time, until the statute of Charles 2, on this subject, it is contended that the rule was so settled: giving the scire facias or action of debt to the representative of the person who obtained the judgment, instead of the administrator de bonis non, the person entitled to the effect of the judgment, upon the principles first stated. Upon looking into the intervening cases, it will be found that either the Judges differed as to the authority of Gough’s Case, or in most cases, admitting the principle that the per *315 son entitled to the benefit of the judgment, was entitled to ihe scire facias, adhered to the decision in Gough’s Case, and decided contrary to that admission, and the rule which would necessarily result from it. The rule relied upon in Gough’s Case, will be found in many cases, to have been over-ruled. That rule was, that there must be a privity between the party obtaining the judgment, and the party claiming the scire facias. In the ease of a judgment obtained by an administrator durante minoritate, the executor, when he comes of age, is admitted to be entitled to the scire facias; and yet there is no privity between him and such administrator, except through the estate of the testator. So an executor, who has been summoned and severed, may revive a judgment obtained by the deceased executor, though there is no privity in such ease, except in relation to the estate of the testator; and if such privity be sufficient, it certainly exists in as great a degree between the administrator de bonis non, and the deceased executor. A promise to the first administrator will support a suit in behalf of the administrator de bonis non. 7 T. E. 382. The rule in Gough’s Case is also certainly departed from, in the eases, where a judgment against an executor is revived by scire facias against the administrator de bonis non. He is certainly as much in the place of the executor, as to judgments rendered in his behalf, as in the case of judgments rendered against the executor; and I cannot perceive the reason of the distinction. The administrator de bonis non, if liable to be sued by scire facias, upon a judgment against the executor, because he is responsible for the debts of the testator, ought to have the benefit of a scire facias or action of debt, to get possession of the estate to which he is certainly entitled; and on the ground of privity in relation to the estate of the testator, ought to be considered as best entitled to the fruits of the judgment. As to the idea, upon which some of the old cases went, that the judgment, by the executor was a nullity, and the administrator de bonis non might sue on the origi *316 nal ground of that judgment, it seems inconsistent with established principles. The defendant had a right to plead the judgment against any other action for the same cause; a right he could not lose by the act of God, which injures no one. The original cause of action is swallowed up in ° _ 1 the judgment; and a personal right, once suspended, is gone forever. 2 Black. Comm. 432.
Having the right to the judgment, the appellee was entitled to the scire facias, or the action upon it, which he has prosecuted, and the judgment ought to be affirmed.